UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JASON SOUTH, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:19-cv-1763 (VLB) |
| | : | |
| M. LICON-VITALE, et al., | : | |
| Defendants. | : | |
| | : | |

## ORDER

Plaintiff, Jason (Anna) South, currently confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey, filed this complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 288 (1971), while she was confined at FCI Danbury. On December 6, 2019, the Court filed an Order dismissing all claims under the Americans with Disabilities Act and ordering plaintiff to show that she had exhausted her administrative remedies on the *Bivens* and Rehabilitation Act claims prior to October 19, 2019, the day she signed the Complaint. Doc. #11. On March 6, 2020, plaintiff submitted evidence of exhaustion of administrative remedies. She also has filed a motion seeking to add the Bureau of Prisons as a defendant as well as an injunction ordering her transfer to a female correctional facility.

## I. Exhaustion of Administrative Remedies

The Court first considers whether plaintiff has shown that she exhausted her administrative remedies before commencing this action. The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit,

including a *Bivens* action, to exhaust available administrative remedies *before* a court may hear her case.  *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, —— U.S. ——, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Although exhaustion of administrative remedies is an affirmative defense on which the defendants bear the burden of proof, s*ee Jones,* 549 U.S. at 216, the district court may dismiss a complaint for failure to exhaust administrative remedies on its own motion after affording the inmate notice and an opportunity to address the issue.  *Mojias v. Johnson*, 351 F.3d 606, 610-11 (2d Cir. 2003).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which she is confined and do so properly.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  *See also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly").  Exhaustion of administrative remedies must be completed before the inmate files suit.  *Baez v.*

*Kahonowicz*, 278 F. App'x 27, 29 (2d Cir. 2008) (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001)).

Prisoners in BOP custody exhaust their administrative remedies by completing the BOP four-step Administrative Remedy Program ("ARP").  *See generally* 28 C.F.R. Part 542, Subpart B.  First, a prisoner must attempt informal resolution of her complaint by presenting the matter to prison staff members using a BP-8 form.  *See* 28 C.F.R. § 542.13(a); *Banks v. United States*, No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *10 (S.D.N.Y. Sept. 15, 2011).  Second, if the matter is not resolved informally, the prisoner must submit a formal written Administrative Remedy Request to the warden using a BP-9 form.  *See* 28 C.F.R. § 542.14; *Banks,* 2011 WL 4100454, at *10.  Third, if the formal complaint is denied, an inmate may submit an appeal to the requisite BOP Regional Director using a BP-10 form.  *See* 28 C.F.R. § 542.15; *Banks,* 2011 WL 4100454, at *10.  Fourth, an adverse decision from a Regional Director may be appealed to the BOP General Counsel's Office on form BP-11.  *Id.*  An administrative appeal is considered finally exhausted when it has been considered by the BOP General Counsel's Office in the BOP Central Office.  *See* C.F.R. §§ 542, 542.15.

In the order, the Court noted that plaintiff had submitted evidence of only one administrative appeal to the regional official.  That appeal concerned plaintiff's request for a transfer from dormitory housing to a single cell because of discrimination.  She presented no evidence that she had exhausted administrative remedies on her failure to protect or privacy claims.  Doc. #11 at 11.  Plaintiff has submitted a copy of her Central Office appeal dated September

29, 2019 in which she cites the September 2019 attack as evidence that she is not safe in a male facility.  The response is dated December 9, 2019, over a month after plaintiff commenced this action.  Doc. #15 at 5.  Plaintiff also submits four rejection notices for administrative remedy appeals to the regional office regarding the attack, dated between November 20, 2019 and December 3, 2019.  The appeals were rejected as duplicative with a notation that the response to the first appeal was due December 14, 2019.  *Id.* at 33-35, 38.

The exhaustion process is not complete until the Central Office responds to the final appeal.  As this did not occur prior to October 19, 2019 on plaintiff's claims regarding the attack and her request for transfer to a single cell, she did not exhaust her administrative remedies on those claims prior to commencing this action.  In addition, plaintiff presents no evidence that she exhausted her administrative remedies on her Rehabilitation Act claim.  The failure to protect and Rehabilitation Act claims are dismissed for failure to exhaust administrative remedies.

Plaintiff argues that administrative remedies were not available to her because she did not receive responses to her informal requests and grievances to the warden.  As the failure to protect grievances proceeded to the Regional Office and Central Office levels, this argument is unavailing on her failure to protect claim.  Plaintiff has, however, submitted evidence that her regional appeal on the privacy claim was rejected because she had not first appealed to the warden, *id.* at 37, as well as a July 2019 receipt for the institutional grievance submitted to the warden with a notation that she never received a response.  *Id.*

4

at 39.

The PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858.  Section 1997e(a) provides that only those administrative remedies that "are available" must be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotations and citations omitted).  In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA.  *Id.* at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.* at 1859.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.

In *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  In considering the issue of availability, however, the court is

5

guided by these illustrations.  *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at \*4 (S.D.N.Y. July 19, 2016).

The Court considers the evidence, that plaintiff filed the institutional grievance but was prevented from proceeding further because correctional staff failed to respond to the grievance, sufficient at this stage of the proceedings to show that administrative remedies were not available to plaintiff on her privacy claim.  Thus, plaintiff is excused from the exhaustion requirement only as to the privacy claim.

## II.  Privacy Claim

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee.  *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)).  Here, plaintiff is proceeding *pro se.*

In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544,

555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

A.    <u>Allegations re Privacy Claim</u>

Plaintiff has gender dysphoria.  Doc. #1 ¶ 1. She is a female transgender inmate transitioning from male to female.  *Id.* ¶ 1(A).  She is confined in a men's prison.  *Id.*

On August 5, 2019, plaintiff purchased make-up from the commissary.  *Id.* ¶ 3.  She asked staff to be discrete and not tell other inmates that she was transgender.  *Id.*  Plaintiff was attempting to transition quietly to avoid sexual harassment or assault until she could transfer to a female facility.  *Id.*

Defendants Watson and Gehard let other inmates see plaintiff's purchases and told inmates working in the commissary as well as inmates in her housing unit that she was transgender.  *Id.*  This resulted in increased harassment and, plaintiff believes, led to the September 25, 2019 assault.  *Id.*  Plaintiff believes that defendants Watson and Gehard acted in retaliation for her filing an administrative remedy regarding a delay in her commissary purchases for over a month.  *Id.*  To date, defendant Gehard continues to share details of plaintiff's gender dysphoria

and information contained in her administrative remedy filings with other inmates. *Id*. This causes plaintiff, housed in protective custody in the SHU, to be humiliated and threatened with assault and rape by other SHU inmates. *Id*. In SHU, plaintiff must share a cell with a male inmate. *Id*.

**B.**   **Discussion**

Plaintiff filed this case as a *Bivens* claim which seeks to hold persons acting under color of federal law accountable for their conduct that violates a plaintiff's constitutional rights. *See Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) ("The purpose of the *Bivens* remedy 'is to deter individual federal officers from committing constitutional violations.'" (citation omitted)). Plaintiff contends that defendants Watson and Gehard violated her constitutional right to privacy and did so in retaliation for a grievance she filed a month earlier. Doc. #1 ¶ 3.

The Supreme Court has never recognized under *Bivens*, a First Amendment retaliation claim. *See, e.g., Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); s*ee also Wilson v. Bolt*, No. 9:18-CV-416(DNH/TWD), 2019 WL 3561742, at *3 (N.D.N.Y. Aug. 6, 2019) (dismissing First Amendment retaliation claim filed under *Bivens*), *appeal dismissed*, No. 19-2645 (2d Cir. Nov. 18, 2019); *Widi v. Hudson*, No. 9:16-CV-1042(FJS/DJS), 2019 WL 3491250, at *3 (N.D.N.Y. Aug.1, 2019) (citing cases declining to recognize *Bivens* claim for retaliation). Thus, any retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff's constitutional privacy claim also is not cognizable under *Bivens*. To state a *Bivens* claim, plaintiff must first identify a constitutional right violated

by the defendants. *Bivens*, 403 U.S. at 397. Plaintiff has identified her constitutional right to privacy. That is not, however, the end of the inquiry. "[C]ourts will not create additional *Bivens* remedies '[w]hen the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration.'" *Khalfani v. Secretary, Dep't of Veterans Affairs*, No. 94-CV-5720(JC), 1999 WL 138247, at *2-3 (E.D.N.Y. Mar. 10, 1999) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Courts considering privacy claims under *Bivens* have held that the Privacy Act, 5 U.S.C. § 552a, precludes a Bivens action for damages. *See Young v. Tryon*, No. 12-CV-6251CJS, 2015 WL 309431, at *18 (W.D.N.Y. Jan. 23, 2013) (citing cases). Accordingly, plaintiff's remaining *Bivens* claim is dismissed. The Court will consider plaintiff's claim under the Privacy Act.

"The [Privacy] Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004). Regarding disclosure of record information, the Privacy Act provides: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains...." 5 U.S.C. § 552a(b). The Privacy Act also provides that, if an agency fails to comply with the statute, "the individual may bring a civil action against the agency" in federal district court. 5

9

U.S.C. § 552a(g)(1)(D).

By its terms, the Privacy Act authorizes suit only against the agency.  Thus, all claims against the individual defendants are dismissed.  Plaintiff, however, has filed a motion seeking leave to add the Bureau of Prisons, the proper defendant for her Privacy Act claim, to this action.  Plaintiff's motion is granted.

To state a claim for violation of the Privacy Act, plaintiff must allege facts showing that the information disclosed is covered by the Act, *i.e.*, it is a "record" contained in a "system of records"; the agency disclosed the information; the disclosure had an adverse effect on plaintiff; and the disclosure was intentional. *See Biton v. Cuomo*, No. 09-CV-02831(CBA), 2009 WL 3052650, at *2 (E.D.N.Y. Sept. 23, 2009) (citation omitted).

Plaintiff alleges that she filed requests for treatment for gender dysphoria including hormone therapy and surgeries.  Thus, her condition would be documented in Bureau of Prisons records.  She alleges that the defendants deliberately disclosed the information and, as a result of the disclosure, she was sexually assaulted.  These allegations are sufficient to state a plausible Privacy Act claim.

The Privacy Act allows recovery for "actual damages."  5 U.S.C. § 552a(g)(4)(A).  In *F.A.A. v. Cooper*, 566 U.S. 284 (2012), the Supreme Court held that there is no recovery under the Privacy Act for mental or emotional distress. *Id.* at 303.  The Court considered reasonable, an analogy of actual damages under the Privacy Act to special damages in defamation cases.  Under this analogy, the Court clarified this term to mean "pecuniary or economic harm."  *Id.* at 299.  In the

analysis, however, the Court was excluding items covered by general damages in defamation cases, such as loss of reputation, shame, embarrassment, mortification and hurt feelings. *Id.* at 296.  The Court has not addressed whether actual damages would encompass actual physical injury such as the sexual assault suffered by plaintiff.  One district court, however, has held that a prisoner's allegation that he suffered threats to his life based on the disclosure of information was sufficient to allege the required adverse effect to state a Privacy Act claim. *See Pinson v. Federal Bureau of Prisons*, No. 1:13-CV-1821-AWI-MJS, 2015 WL 756501, at *6 (E.D. Cal. Feb. 23, 2015) (denying motion to dismiss Privacy Act claim), *report and recommendation adopted*, 2015 WL 1405224 (E.D. Cal. Mar. 26, 2015).  In the absence of Supreme Court or Second Circuit guidance on the question of damages, the Court will permit plaintiff's Privacy Act claim to proceed at this time.

In the motion to amend, in addition to trying to reassert claims the Court has dismissed, plaintiff seeks to add a claim for violation of the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301, *et seq.*  The PREA was enacted to address the issue of rape in prison. It was intended to compile data and statistics concerning incidents of prison rape and to develop and implement national standards to detect, prevent, and punish prison rape. *See* 34 U.S.C. § 30302-03, 30306-07.  The PREA does not provide any specific rights to prisoners. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-80 (2002) (absent "an 'unambiguous' intent to confer individual rights," such as a private right of action, the court will not imply the existence of such a right in a federal funding provision). Thus,

11

district courts have held that there is no private right of action for prisoners to sue prison officials for failure to comply with the PREA.  *See Abrams v. Erfe*, No. 3:17-cv-1570(CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (PREA does not create private right of action for prisoners) (citing cases).  Accordingly, as plaintiff has no private right of action under the PREA, her motion to amend the complaint to add such a claim is denied and the claim is dismissed pursuant to 28 U.S.C. § 1915(a)(b)(1).

### III.  Motion for Preliminary Injunction

Following the sexual assault, plaintiff was transferred from FCI Danbury to Fort Dix, New Jersey.  She now asks this Court to order her transfer from Fort Dix to a female correctional facility.

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Grand River Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted).  To prevail, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Glossip v. Gross*, ___ U.S. ___, 135 S. Ct. 2726, 2736 (2015) (internal quotation marks and citation omitted).  The Second Circuit considers a showing of irreparable harm the most important requirement for an award of preliminary injunctive relief.  *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

"[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.,* the situation that existed between the parties immediately prior to the events that precipitated the dispute." *Asa v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010); *Transamerica Rental Finance Corp. v. Rental Experts*, 790 F. Supp. 378, 381 (D. Conn. 1992) ("It is well established in this Circuit that the purpose of a preliminary injunction is to preserve the *status quo* between two parties.").

Where the plaintiff seeks a mandatory injunction, *i.e.*, an injunction seeking to order the defendants to perform positive acts, he must meet a higher standard. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief." *Id.* (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiff seeking mandatory injunction must make "clear" or "substantial" showing of likelihood of success on the merits of his claim).

The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140,

13

167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994) (other citations omitted).

In addition, because plaintiff must demonstrate a likelihood of success on the merits of his claims in the complaint to obtain preliminary injunctive relief, the injunctive relief requested must relate to those claims. *See, e.g., De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health,* No. 3:17-cv-325(SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint).

The only remaining claim in this case is plaintiff's Privacy Act claim. Plaintiff's request to be transferred from Fort Dix to a female correctional facility is unrelated that claim.  Thus, preliminary injunctive relief is not warranted.

## CONCLUSION

Plaintiff's failure to protect and Rehabilitation Act claims are DISMISSED for failure to exhaust administrative remedies before commencing this action. Plaintiff is excused from the exhaustion requirement as to the privacy claim as she has submitted evidence suggesting that administrative remedies were not available on that claim.

Plaintiff's *Bivens*' claims for violation of her constitutional right to privacy or for retaliation are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) as these

14

claims are not cognizable under *Bivens*.

Plaintiff's motion to amend to add the Bureau of Prisons [Doc. #16] is GRANTED and her claim will proceed against the Bureau of Prisons as a violation of the Privacy Act.  The Clerk is directed to add the Bureau of Prisons as a defendant and terminate all other defendants as no claims remain against them.

Plaintiff's motion for preliminary injunction [Doc. #16] is DENIED.

The Court enters the following orders.

(1)    The Clerk is directed to prepare a summons and shall deliver three copies of the summons and complaint to the United States Attorney for the District of Connecticut, at any one of the three officers, send two copies of the summons and complaint by registered mail to the Attorney General of the United States at 950 Pennsylvania Avenue, N.W., Washington D.C. 20530, and send one copy of the summons and complaint by registered mail to the Bureau of Prisons at 320 First Street, N.W., Washington, D.C. 20534.

(2)    The Clerk shall send plaintiff a copy of this Order.

(3)    The defendant shall file its response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date of service of the summons.  If the defendant chooses to file an answer, it shall admit or deny the allegations and respond to the cognizable claim recited above.  The defendant also may include all additional defenses permitted by the Federal Rules.

(4)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

15

(5)    All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(6)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)    If plaintiff changes her address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if she is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If plaintiff has more than one pending case, she should indicate all case numbers in the notification of change of address.  Plaintiff should also notify the defendants or the attorney for the defendants of her new address.

SO ORDERED.

Dated this 9th day of June 2020 at Hartford, Connecticut.

            /s/
Vanessa L. Bryant
United States District Judge

16